# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **MADISON M. LARA,** *et al.* | : |
| Plaintiffs | : |
| v. | : Civil Action No. 2:20-cv-01582 |
| **COL. ROBERT EVANCHICK,** Commissioner of Pennsylvania State Police | : |
| Defendant | : |

## REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................... ii

INTRODUCTION ...................................................................................................................1

ARGUMENT ...........................................................................................................................2

I. Plaintiffs are likely to succeed on the merits. ..............................................................2

    A. Plaintiffs' claims should not be dismissed for failure to join required parties. .......2

    B. The Second Amendment protects the right of 18-to-20-year-olds to carry firearms outside the home. ........................................................................................4

    C. The challenged Pennsylvania ban is categorically unconstitutional. ......................9

    D. The challenged ban fails any level of heightened constitutional scrutiny. ...........11

II. The remaining factors favor preliminary injunctive relief. ................................................15

CONCLUSION ......................................................................................................................15

## TABLE OF AUTHORITIES

**Cases**                                                                         **Page**

*Acosta v. Democratic City Comm.*, 288 F. Supp. 3d 597 (E.D. Pa. 2018) ...................3

*Bruni v. City of Pittsburgh*, 824 F.3d 353 (3d Cir. 2016) ...............................................15

*Commonwealth v. McKown*, 79 A.3d 678 (Pa. Super. Ct. 2013).....................................13

*Craig v. Boren*, 429 U.S. 190 (1976)...............................................................................14

*Disabled in Action of Pa. v. Southeastern Pa. Transp. Auth.*,
   635 F.3d 87 (3d Cir. 2011)............................................................................................2

*District of Columbia v. Heller*, 554 U.S. 570 (2008)............................................5, 6, 8, 9

*Doe I v. Governor of Pa.*, 977 F.3d 270 (3d Cir. 2020)....................................................12

*Doe v. Miller*, 886 A.2d 310 (Pa. Commw. Ct. 2005) .......................................................3

*Doe v. Wolf,* CV 16-6039, 2017 WL 3620005 (E.D. Pa. Aug. 23, 2017) ........................ 3

*Drake v. Filko*, 724 F.3d 426 (3rd Cir. 2013)........................................................4, 5, 6, 12

*Flynt v. Shimazu*, 940 F.3d 457 (9th Cir. 2019)..................................................................4

*Folajtar v. Attorney Gen. of the United States*,
   2020 WL 6879007 (3d Cir. Nov. 24, 2020)...............................................................7

*Gamble v. United States*, 139 S. Ct. 1960 (2019).........................................................5, 6

*Hanover Shoe, Inc. v. United Shoe Mach. Corp.*, 392 U.S. 481 (1968) ...........................4

*Horsley v. Trame*, 808 F.3d 1126 (7th Cir. 2015).............................................................13

*Howell v. Wolf*, 2020 WL 2187764 (Pa. Commw. Ct. May 6, 2020).................................4

*K.A. ex rel. Ayers v. Pocono Mountain Sch. Dist.*, 710 F.3d 99 (3d Cir. 2013) ...............15

*Kuhnle Bros., Inc. v. Cnty. of Geauga*, 103 F.3d 516 (6th Cir. 1997) ...............................4

*McCullen v. Coakley*, 573 U.S. 464 (2014) ...............................................................14, 15

*McDonald v. City of Chicago*, 561 U.S. 742 (2010).....................................................7, 11

*Mediq Mgmt. Servs., Div. of Mediq, Inc. v. Kerns*,
   607 F. Supp. 328 (E.D. Pa. 1985) ..............................................................................2

*Moore v. Madigan*, 702 F.3d 933 (7th Cir. 2012).............................................................6

*National Rifle Ass'n Inc. v. BATFE*, 700 F.3d 185 (5th Cir. 2012) .........................7, 8, 13

*National Rifle Ass'n Inc. v. BATFE*, 714 F.3d 334 (5th Cir. 2013) ...............................8, 9

*Powell v. Tompkins*, 926 F. Supp. 2d 367 (D. Mass. 2013)....................................7, 9, 13

*Roberts v. Neace*, 958 F.3d 409 (6th Cir. 2020) .............................................................11

*Roman Cath. Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63 (2020)...............................11

*San Antonio Indep. Sch. Dist. v. Rodriguez*, 411 U.S. 1 (1973) .....................................11

*United States v. Marzzarella*, 614 F.3d 85 (3d Cir. 2010)..................................................................12

*Whitewood v. Wolf*, 2013 WL 12317057 (M.D. Pa. Nov. 15, 2013) ................................................3

*Wrenn v. District of Columbia*, 864 F.3d 650 (D.C. Cir. 2017) ......................................................6

**Constitutional and Statutory Provisions and Rules**

U.S. CONST. amend. II ................................................................................................................4

18 PA. C.S.

 § 6106..........................................................................................................................1, 5
 § 6106(b)(4)....................................................................................................................10
 § 6106(b)(8)....................................................................................................................10
 § 6106(b)(9)....................................................................................................................10
 § 6107...........................................................................................................................1, 5
 § 6107(a)(1)....................................................................................................................10
 § 6109..............................................................................................................................1
 § 6109(b).........................................................................................................................5
 § 6109(c).........................................................................................................................3
 § 6109(e)(3)....................................................................................................................3
 § 6111.1(a).....................................................................................................................3
 § 6111.5..........................................................................................................................3
 § 6124..............................................................................................................................3

71 PA. C.S. § 251 ......................................................................................................................2, 3

FED. R. CIV. P.

 19(a)(1)............................................................................................................................4
 19(a)(1)(A)......................................................................................................................2
 19(a)(2)............................................................................................................................4
 19(b).................................................................................................................................4
 65(d)(2)............................................................................................................................3

**Other Authorities**

1 BLACKSTONE COMMENTARIES ....................................................................................................8

Cassandra K. Crifasi et al., *Association Between Firearm Laws and Homicide in Urban Counties*, 95 J. URBAN HEALTH 383 (2018)................................................................................13

David B. Kopel & Joseph G.S. Greenlee, *History and Tradition in Modern Circuit Cases on the Second Amendment Rights of Young People*, 43 S. ILL. U. L.J. 119 (2018) ...................8

John Donohue et al., *Right-to-Carry Laws and Violent Crime*,
 16 J. EMPIRICAL LEGAL STUD. 198 (2019)..............................................................................12

Michael Siegel et. al., *Easiness of Legal Access to Concealed Firearm Permits and Homicide Rates in the United States*, 107 AM. J. PUB. HEALTH 1923 (2017) .........................12

NATIONAL RESEARCH COUNCIL, FIREARMS AND VIOLENCE
 (Charles F. Wellford et al., eds., 2005)...................................................................................15

**INTRODUCTION**

The Second Amendment protects the rights of 18-to-20-year-olds to carry firearms, particularly for self-defense outside the home. The provisions challenged here—including 18 PA. C.S. § 6106, which requires a license to carry firearms concealed or transport them outside of narrowly defined circumstances,[1] Section 6107, which requires a license to carry firearms (concealed or otherwise) in public during a declared emergency, and Section 6109, which forbids 18-to-20-year-olds from obtaining such a license—bar 18-to-20-year-olds from exercising that right and are therefore unconstitutional. Neither Defendant's Response to our Motion for Preliminary Injunction, Doc. 25 ("PI Br."), nor his Motion to Dismiss Brief, Doc. 24 ("MTD Br."), provides *any meaningful argument* that those provisions regulate conduct outside the scope of the Second Amendment. Nor do they provide *any meaningful evidence* that would justify them.[2]

Defendant fails to justify the challenged provisions because he fundamentally misunderstands the nature of this challenge. As is clear from our complaint and our opening brief, the constitutional violation in this case is not caused by Pennsylvania's concealed-carry licensing requirements, or its limits on carrying firearms during a declared emergency, *standing alone*. Rather, what is unconstitutional is the *combined effect* of these limits, which *together* operate to ban 18-to-20-year-old adults from bearing arms outside the home for lawful purposes, including self-defense. Pennsylvania ignores the transportation restrictions of 6106, feebly tries to defend the age-based limits on concealed carry *in isolation* and likewise offers a weak defense of Section

---

[1] While our arguments focus primarily on the restrictions on carrying firearms in public, they apply similarly to invalidate the transport restrictions we have challenged.

[2] This Court's December 10, 2020 Order directed that Defendant's brief not exceed 30 pages, but Defendant's brief—itself 23 pages long—purports to "incorporate[ ]" the full content of his separate, 36-page brief supporting his motion to dismiss. PI Br. 2. Plaintiffs will separately respond to Defendant's motion to dismiss, but this Reply also endeavors to address those arguments in Defendant's motion to dismiss brief that are pertinent here.

6107's "emergency" limitations *in isolation*. It never even tries to defend the combined operation and effect of these restrictions—because they are indefensible.

## ARGUMENT

I. **Plaintiffs are likely to succeed on the merits.**

    A. **Plaintiffs' claims should not be dismissed for failure to join required parties.**

Defendant starts with the threshold assertion that "there is some question" whether the injunction requested by Plaintiffs would give them "complete relief," given that we have only named Commissioner Evanchick as a defendant and there are a "multitude of police departments" in Pennsylvania. PI Br. 4. There is nothing to this.

Under FED. R. CIV. P. 19(a)(1)(A), a person "must be joined as a party" if "[i]n that person's absence, the court cannot accord complete relief among existing parties." The appropriate method for a defendant to raise an objection under Rule 19 is to move for dismissal under Rule 12(b)(7), and on such a motion the defendant "bears the burden of showing why an absent party should be joined under Rule 19." *Disabled in Action of Pa. v. Southeastern Pa. Transp. Auth.*, 635 F.3d 87, 97 (3d Cir. 2011). Defendant has filed no motion under Rule 12(b)(7), and he has presented no argument showing why "the myriad of law enforcement officers and agents within the Commonwealth," PI Br. 5, must be joined—apart from the suggestion that "there is some question" whether their presence is necessary for Plaintiffs to obtain relief. Defendant's failure to shoulder his burden under Rule 12(b)(7) is alone a sufficient reason for rejecting the objection. *See Mediq Mgmt. Servs., Div. of Mediq, Inc. v. Kerns*, 607 F. Supp. 328, 330 (E.D. Pa. 1985).

In any event, Defendant's invocation of Rule 19(a) fails on the merits. There can be no question that Defendant Evanchick, as Commissioner of the State Police, is the only necessary defendant in this action, given that: (a) Pennsylvania law establishes him as "the head and executive officer of the Pennsylvania State Police," vested with authority to "make rules and

2

regulations" for the "conduct" and "control and regulation of the State Police Force," 71 PA. C.S. § 251; and (b) the Uniform Firearms Act itself provides that "[t]he Pennsylvania State Police shall have the responsibility to administer the provisions of this chapter," 18 PA. C.S. § 6111.1(a); *see also id.* § 6111.5, and that the Commissioner shall "establish form specifications and regulations" governing Section 6109's "[l]icense to carry firearms," *id.* § 6124; *see also id.* § 6109(c), (e)(3). Given these provisions, Defendant Evanchick has the authority to ensure Plaintiffs receive the licenses Sections 6106 and 6107 require or are not arrested for carrying firearms without a license.

Defendant tentatively suggests that the "myriad of law enforcement officers and agents within the Commonwealth" are not "merely ministerial" officials, PI Br. 5, but he nowhere suggests that these officials would have discretion to arrest an 18-to-20-year-old who has been issued a license pursuant to Commissioner Evanchick's instructions. Nor does he suggest that these local officials would have authority *to disregard* his instructions in compliance with an injunction entered by this Court and binding on him and his employees and agents, *see* FED. R. CIV. P. 65(d)(2), forbidding them from enforcing the challenged restrictions. Indeed, the only authority Defendant cites is a district court opinion concluding that various local officials *were not* necessary parties, precisely because they *would be bound* to comply with a judgment running against the named state-official defendant. *Whitewood v. Wolf*, 2013 WL 12317057, at *3 (M.D. Pa. Nov. 15, 2013); *see also Doe v. Wolf,* CV 16-6039, 2017 WL 3620005, at *12 (E.D. Pa. Aug. 23, 2017) (proper party in a constitutional challenge to the Uniform Firearms Act is the Commissioner); *Doe v. Miller*, 886 A.2d 310, 312 n.1 (Pa. Commw. Ct. 2005), *aff'd,* 587 Pa. 502 (2006) ("The Commissioner of the Pennsylvania State Police is the proper defendant in this action [challenging constitutionality of Megan's Law II] as he is charged with the administration . . . of the [challenged statute]."); *Acosta v. Democratic City Comm.*, 288 F. Supp. 3d 597, 649 (E.D. Pa. 2018).

Finally, even if the Court were to reject all of the foregoing and conclude that some local law-enforcement officials *are* necessary parties, the appropriate response would not be outright dismissal of the action. Rather, the appropriate response would be entry of an "order that the person be made a party." FED. R. CIV. P. 19(a)(2).[3]

### B. The Second Amendment protects the right of 18-to-20-year-olds to carry firearms outside the home.

Defendant's merits responses to our Second Amendment claims are equally unpersuasive.[4]

1. Our opening brief explained at length why the text, purpose, and history of the Second Amendment—as well as the Supreme Court's decision in *Heller*—establish that "the right of the people to . . . *bear* Arms," U.S. CONST. amend. II, necessarily applies outside the home. *See* Br. in Support of Pls.' Mot. for Prelim. Inj. at 7–14, Doc. 11-8 ( "Pls.' Br."). The State does not refute any of this evidence and in fact does not even try. Neither of its briefs contains *any* discussion of the text of the Second Amendment, or *any* explanation of how confining the right to keep and bear arms to the home could be squared with its purpose and history.

Instead, Pennsylvania places all of its chips on the Third Circuit's decision in *Drake v. Filko*, 724 F.3d 426 (3rd Cir. 2013). *Drake* is inapposite. As Defendant acknowledges, *see* PI Br.

---

[3] Defendant has made no argument that the addition of such parties would "deprive the court of subject-matter jurisdiction" or, if it would, that the case cannot "in equity and good conscience . . . proceed among the existing parties." Rule 19(a)(1), (b).

[4] Defendant briefly suggests that our Second Amendment claims are somehow time-barred because Section 6107 was enacted in 1968. MTD Br. 35 n.7. But Plaintiffs are not challenging the enactment of the law in 1968; they are challenging its continued and current enforcement. *See* Compl. ¶¶ 10–24. It is well settled that a constitutional challenge in such circumstances is not untimely, since the continuing enforcement of an unconstitutional law inflicts a continuing harm. *See, e.g.*, *Flynt v. Shimazu*, 940 F.3d 457, 462 (9th Cir. 2019); *Kuhnle Bros., Inc. v. Cnty. of Geauga*, 103 F.3d 516, 522 (6th Cir. 1997); *see also Hanover Shoe, Inc. v. United Shoe Mach. Corp.*, 392 U.S. 481, 502 n.15 (1968). The only case Defendant cites proves the point; that case found the action untimely because it belatedly challenged "the constitutionality of the statute's enactment process," *Howell v. Wolf*, 2020 WL 2187764, at *2 (Pa. Commw. Ct. May 6, 2020), not its continuing enforcement.

10, *Drake* expressly *left open* the question whether "the individual right to bear arms for the purpose of self-defense extends beyond the home," so it cannot control this Court's answer to that question. *Drake*, 724 F.3d at 431. Instead, *Drake* upheld New Jersey's licensing scheme because it concluded that the requirement that permit applicants show a "justifiable need" before carrying firearms outside the home "qualifies as a 'longstanding,'" "presumptively lawful" regulation that regulates conduct falling outside the scope of the Second Amendment's guarantee." *Id.* at 434. Whether or not *Drake* was right, the point is completely irrelevant here, because Plaintiffs *are not challenging* a "justifiable need"-type licensing standard. Rather, we are challenging the combined effect of: (1) Pennsylvania's restrictions on carrying and transporting firearms without a concealed carry license, 18 PA. C.S. § 6106; (2) its requirement that during a declared emergency (like the present), a law-abiding citizen can *only* "carry weapons in case of confrontation" outside the home, *District of Columbia v. Heller*, 554 U.S. 570, 592 (2008), if they obtain a concealed carry license, *id.* § 6107; and (3) its rule *barring* ordinary 18-to-20-year-old adults from obtaining such a license, *id.* § 6109(b). The necessary function of these provisions, taken together, is to flatly prohibit ordinary 18-to-20-year-olds from carrying operable firearms outside the home.

Pennsylvania also cites *Drake* for the proposition that "certain longstanding regulations are 'exceptions' to the right to keep and bear arms, such that the conduct they regulate is not within the scope of the Second Amendment." MTD Br. 19 (quoting *Drake*, 724 F.3d at 431). That is irrelevant, too, given that Pennsylvania has provided no historical evidence whatsoever supporting the notion that a complete ban on 18-to-20-year-olds carrying firearms outside the home is a sufficiently "longstanding regulation." The State says that "Pennsylvania's regulation of the right to keep and bear arms has a several hundred years long history," *id.*, but the only regulations it cites that date back to the Founding—the only relevant period for determining "the public

5

understanding . . . of the right codified by the Second Amendment," *Gamble v. United States*, 139 S. Ct. 1960, 1975 (2019)—are limits on "the public discharge of firearms" or "hunting on lands other than on one's own," MTD Br. 2. Those picayune, time, place, and manner-type restrictions obviously provide no historical support for the challenges here. *See Heller*, 554 U.S. at 632 (dismissing dissent's reliance on laws that "restricted the firing of guns within the city limits" as "provid[ing] no support for the severe restriction in the present case").

Nor does Defendant persuasively distinguish the two federal appellate opinions holding that the Second Amendment right to armed self-defense plainly extends outside the home. *See Wrenn v. District of Columbia*, 864 F.3d 650, 661 (D.C. Cir. 2017); *Moore v. Madigan*, 702 F.3d 933, 942 (7th Cir. 2012). Pennsylvania tries to dismiss these cases with a wave of its *Drake* wand, suggesting that "the Third Circuit *expressly* declined to adopt the reasoning of" *Moore*. PI Br. 9 n.4. But as the State's own quotation of *Drake* shows, while the Third Circuit did not *adopt* *Moore*'s reasoning, it hardly *rejected* it. *Drake*, 724 F.3d at 431. Defendant also tries to sweep *Moore* aside because it dealt with "a flat ban on carrying ready-to-use guns outside the home." PI Br. 10 n.4. But as just explained, the laws challenged in this case, taken together, *impose just such a ban*. Indeed, that makes *Moore the most directly on-point appellate-court precedent* in this case. And *Moore*, of course, struck Illinois's flat ban down as flatly unconstitutional.

This point also disposes of the State's suggestion that Plaintiffs are seeking "a Second Amendment right to open carry firearms under any circumstances." *Id.* at 20 (citing *Gould v. Morgan*, 907 F.3d 659 (1st Cir. 2018)). No, what Plaintiffs are seeking is the right to carry firearms *in at least some manner* in the very "circumstances" that the Second Amendment, at its heart, was enacted to address: "being armed and ready" for "defensive action in a case of conflict with another person." *Heller*, 554 U.S. at 584 (quoting *Muscarello v. United States*, 524 U.S. 125, 143 (1998)).

6

2.      The State also fails to show that it can ban Plaintiffs from carrying firearms outside the home because they have not yet turned 21. Here again, the text, purpose, and history of the Second Amendment conclusively show that its protections extend to law-abiding 18-20-year-olds, *see* Pls.' Br. 13–18, and here again, Pennsylvania barely even tries to refute this wealth of evidence. Its discussion of history is little more than a series of page-length quotations copied and pasted from the decisions in *National Rifle Ass'n Inc. v. BATFE*, 700 F.3d 185 (5th Cir. 2012), and *Powell v. Tompkins*, 926 F. Supp. 2d 367 (D. Mass. 2013), *aff'd on other grounds,* 783 F.3d 332 (1st Cir. 2015). Neither opinion is binding here; and *NRA*'s reasoning—as well as *Powell*'s, which largely parrots *NRA*—is deeply unpersuasive. This court should not follow those decisions into error.

The Fifth Circuit's conclusion in *NRA*, for example, was based in part on Founding-era "gun safety regulations" and a handful of laws "that targeted particular groups for public safety reasons." *NRA,* 700 F.3d at 200. But as noted above, "laws regulating the storage of gun powder" or "prohibiting the use of firearms on certain occasions and in certain places," *id.* at 200, plainly cannot support the blanket restrictions at issue here. Similarly, the Founding-era laws "disarming certain groups" for "public safety reasons"—such as "law-abiding slaves, free blacks, and Loyalists"—obviously come up short. *Id*. Racist laws targeting African-Americans do not evidence the meaning of the Second Amendment. *See McDonald v. City of Chicago*, 561 U.S. 742, 771–78 (2010). And laws disarming loyalists who maintained allegiance to a foreign power that *was literally invading the American homeland* hardly provide support for draconian restrictions on law-abiding 18-to-20-year-olds. *See Folajtar v. Attorney Gen. of the United States*, 2020 WL 6879007, at *14 (3d Cir. Nov. 24, 2020) (Bibas, J., dissenting).

The Fifth Circuit noted, too, that "[t]he age of majority at common law was 21." *NRA*, 700 F.3d at 201; *see also* PI Br. 18. But it is important to understand that in the Founding Era (as is

7

still true today), age requirements were "different for different purposes." 1 BLACKSTONE COMMENTARIES *463. At age 14, for example, individuals were deemed capable of discerning right from wrong and could be "capitally punished for any offense." *Id*. at *463–64. Likewise, even though 18-to-20-year-olds would have been considered "minors" for *some* purposes at the Founding, the evidence in our opening brief leaves no doubt that keeping and bearing arms *was not one of them*. To the contrary, adults aged 18 and older were *affirmatively required*, by statutes enacted by colonial, state, and federal legislatures, to keep and bear arms *that they themselves acquired* so that they could fulfill their obligatory militia duties. *See* Pls.' Br. 14–18.

Unable to muster any Founding-era support, the Fifth Circuit turned to the age-based limits that some States began to enact in the late nineteenth century. But the earliest law cited by the court dated to 1856—far too late to give meaningful "insight into [the Second Amendment's] original meaning." *Heller*, 554 U.S. at 614. And in any event, the vast majority of those statutes applied only to certain types of weapons—predominantly concealable arms such as pistols or Bowie knives. *See* David B. Kopel & Joseph G.S. Greenlee, *History and Tradition in Modern Circuit Cases on the Second Amendment Rights of Young People*, 43 S. ILL. U. L.J. 119, 137–42 (2018) (compiling laws). These limited laws do not come close to justifying Pennsylvania's ban.

The Fifth Circuit also erred by not meaningfully engaging the affirmative historical evidence recounted in our opening brief. The *NRA* court "relegate[d] militia service to a footnote," *National Rifle Ass'n Inc. v. BATFE*, 714 F.3d 334, 339 (5th Cir. 2013) (Jones, J., dissenting from denial of rehearing en banc), and even that footnote got the history *wrong*. *Compare NRA*, 700 F.3d at 204 n.17 (citing a single 1779 New Jersey statute as "setting [the militia-service] minimum age at 21"), *with NRA*, 714 F.3d at 342 (Jones, J., dissenting from denial of rehearing en banc) (explaining that this law only supplemented the general militia act and expressly preserved militia

officers' ability to enlist males "between the Age of sixteen and twenty-one years"). Defendant's attempt to fill this breach is unpersuasive. He denies that Founding-era militia laws "support Plaintiffs' position because of the disparity in age limits for militia members among the various states." PI Br. 16. But some early variation aside, "[a]t the time of the Second Amendment's passage, or shortly thereafter, the minimum age for militia service in every state became eighteen." *NRA*, 714 F.3d at 340–41 (Jones, J., dissenting from denial of rehearing en banc).

Pennsylvania next tries to dismiss Founding-era militia laws altogether, asserting that "the right to arms is not co-extensive with the duty to serve in the militia." PI Br. 16–17 (quoting *Powell*, 926 F. Supp. 2d at 388 n.18). Of course, *Heller* establishes that Second Amendment is not *limited* to those serving in the militia, since it protects "an individual right unconnected with militia service," 554 U. S. at 582—a proposition that refutes Pennsylvania's attempt to defend the challenged ban on the grounds that "Pennsylvania law still carves out an exception for 18 to 20 year olds who have entered the military," PI Br. 17 n.5.[5] But as explained in our opening brief, the protections guaranteed by the Second Amendment *necessarily* must be *at least as extensive* as the duty to serve in the militia—lest the Amendment fail utterly in "the purpose for which the right was codified: to prevent elimination of the militia." *Heller*, 554 U.S. at 599.

### C. The challenged Pennsylvania ban is categorically unconstitutional.

Because the challenged restrictions, taken together, totally preclude ordinary 18-to-20-year-olds from "being armed and ready" outside the home "in a case of conflict with another person," *Heller*, 554 U.S. at 584, and from bearing arms more generally, they are categorically unconstitutional, and the Court need not engage in any "judge-empowering 'interest-balancing inquiry'" before preliminarily enjoining them, *id.* at 634. Defendant resists this conclusion, arguing

---

[5] This argument also misunderstands the constitutional meaning of "militia"—which refers "all able-bodied men," not "military forces." *Heller,* 554 U.S. at 596.

9

that "Pennsylvania does not impose a total ban on 18-to-20-year-olds' access to firearms," and instead requires "only that the firearm be unloaded during transport in a vehicle and not be concealed on an unlicensed person's body."[6] PI Br. 6, 7. That may be the "only" effect of Sections 6106 and 6109, but as explained above, the combined effect of the provisions challenged here (which include Section 6107, as well) is to impose the very "total ban" on 18-to-20-year-olds' right to bear arms that Defendant disclaims.

The State attempts to dismiss the breadth of the ban by pointing to the statutory exception for those "[a]ctively engaged" in self-defense. *Id.* at 21 (quoting 18 PA. C.S. § 6107(a)(1)). But as we explained in our opening brief, while Section 6101(a)(1) purports on paper to create a self-defense exception, in the real world the supposed exception is wholly illusory. A law-abiding 18-to-20-year-old who, in compliance with Pennsylvania law, *leaves her firearm at home* and who suddenly finds herself "actively engaged" in self-defense outside the home will find little comfort in the thought that *at that point* Section 6107 would allow her to carry a loaded firearm. Defendant has no answer to this argument.

Nor, finally, can the fatal constitutional problems with the challenged regime be assuaged by arguing that Pennsylvania's restrictions "are not permanent and will evaporate upon the termination of the emergency declaration(s) or—in the case of Plaintiffs—upon reaching the age of 21." PI Br. 21; *see also* Amici Curiae Br. at 9, Doc. 32 ("Amici Br."). The COVID-19 state of emergency has now been in place for ten months—and is unlikely to abate for several more. And

---

[6] Defendant neglects to acknowledge the draconian restrictions imposed by Section 6106 on transporting firearms which afflict Plaintiffs and those similarly situated. *See* Lara Decl., Doc. 11-2 (Dec. 1, 2020), Miller Decl., Doc. 11-3, ¶¶ 4–12 (Dec. 1, 2020); Knepley Decl., Doc. 11-4, ¶¶ 4–14 (Dec. 1, 2020); Combs Decl., Doc. 11-5, ¶¶ 8–15 (Dec. 1, 2020); Gottlieb Decl., Doc. 11-6, ¶¶ 6–13 (Dec. 1, 2020). For example, Plaintiffs are barred from stopping for coffee or to use the bathroom when going to an enumerated location, as they must go directly to and from that enumerated location from another enumerated location. *See* Section 6106(b)(4), (8), (9).

the declared emergency arising out of the opioid epidemic has now persisted for *three years* (and counting). Similarly, an 18-year-old adult faces three years of being debarred from bearing arms before "reaching the age of 21." PI Br. 21. Pennsylvania could not forbid 18-to-20-year-olds from obtaining abortions, or suspend all voting rights, for a period of three years or more, and then waive away the obvious constitutional defects of those laws by pointing out that they "are not permanent and will evaporate" in the fulness of time. *Id.* The Second Amendment should not be treated any differently. *McDonald*, 561 U.S. at 780.

Indeed, the Supreme Court has recently held that the ongoing pandemic does not give States license to impose otherwise unconstitutional restrictions, and that there is no pandemic exception to the constitutional restrictions that apply in ordinary times. *See Roman Cath. Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63, 66–67 (2020) (per curium) (enjoining restrictions on religious worship after applying ordinary strict-scrutiny analysis); *see also id.* at 71 (Gorsuch, J., concurring) (explaining that "our usual constitutional standards should apply during the current pandemic"). As the Sixth Circuit has put it, "[w]hile the law may take periodic naps during a pandemic, we will not let it sleep through one." *Roberts v. Neace*, 958 F.3d 409, 414–15 (6th Cir. 2020) (per curiam). A three-year-long coma should be out of the question.

**D.     The challenged ban fails any level of heightened constitutional scrutiny.**

Even if this Court declines to apply *Heller*'s categorical analysis in favor of some form of heightened means-ends scrutiny, Plaintiffs are still likely to succeed.

1.     If the Court does proceed under the "tiers of scrutiny" framework, it should select the highest tier because the challenged restrictions ban an entire class of law-abiding adults from carrying firearms outside the home for self-defense. *See San Antonio Indep. Sch. Dist. v. Rodriguez*, 411 U.S. 1, 17 (1973). Defendant argues that "the Third Circuit, among other circuits, has authoritatively held that intermediate scrutiny applies in this context." PI Br. 7–8 n.3. Not so.

The cases Defendant cites in fact hold that the Second Amendment "is susceptible to several standards of scrutiny," *United States v. Marzzarella*, 614 F.3d 85, 96 (3d Cir. 2010), and that both "intermediate scrutiny[ ] and strict scrutiny" are "potentially available," *Drake*, 724 F.3d at 435—not that intermediate scrutiny *always* applies to Second Amendment challenges. Those cases may have applied intermediate scrutiny, but they are readily distinguishable, since none involved limits as draconian as those challenged here. And while the Third Circuit has stated that "the 'core' of the Second Amendment is the right of law-abiding, responsible citizens to use arms in defense of hearth and home," *Doe I v. Governor of Pa.*, 977 F.3d 270, 273 (3d Cir. 2020) (quotation marks omitted); *see also Drake*, 724 F.3d at 436, those statements are dicta.

2. Even under intermediate scrutiny, the challenged restrictions must fall. As explained in our opening brief, the challenged provisions fail that standard right from the start because they are designed to *reduce the number of firearms in public*—and to the extent they have the effect of curbing violent crime, that is only as a byproduct of this effort to simply suppress the quantity of Second Amendment conduct. Pls.' Br. 21–22. Defendant has no response to this point.

3. Even setting this initial problem aside, the challenged provisions still fail to clear the intermediate scrutiny hurdle. Study after social-science study has failed to find any evidence that restricting the right to carry firearms outside the home causes any discernible reduction of violent crime. *See* Pls.' Br. 23–24. Defendant does not rebut *any* of this evidence, nor does he offer any evidence of his own.[7] Instead, his only meaningful argument on this point is a series of block-

---

[7] Defendant's Amici try to fill this gap, *see* Amici Br. 18–19, but the studies they cite show at most that different restrictive carry laws are *correlated* with lower crime rates—not that they *cause* any reduction. *See, e.g.*, John Donohue et al., *Right-to-Carry Laws and Violent Crime*, 16 J. EMPIRICAL LEGAL STUD. 198, 199 (2019) ("RTC laws are *associated with* higher rates of . . . crime" (emphasis altered)); Michael Siegel et. al., *Easiness of Legal Access to Concealed Firearm Permits and Homicide Rates in the United States*, 107 AM. J. PUB. HEALTH 1923, 2938 (2017)

quotes from the Superior Court of Pennsylvania's decision in *Commonwealth v. McKown*, MTD Br. 28, which—*also* without any analysis of evidence—held that Section 6106 "serve[s] to protect the public from persons who carry concealed firearms for unlawful purposes." 79 A.3d 678, 690 (Pa. Super. Ct. 2013). *McKown*'s unsupported say-so is no substitute for evidence that a flat ban advances public safety.

4.      Pennsylvania has also failed to show how limiting the Second Amendment rights of 18-to-20-year-olds—thereby jeopardizing their safety—advances public safety. Defendant rests entirely on quotations from non-binding decisions in which *other* courts held—based on the evidence presented to *them*—that age-based restrictions are "substantially related to th[e] important government interest in public safety." MTD Br. 31 (quotation marks omitted). But Pennsylvania has presented *no evidence whatsoever* for that proposition here.

Moreover, the non-binding decisions cited by Defendant were wrong to conclude that public safety justifies restricting the rights of 18-to-20-year-olds and jeopardizing their safety. To begin, those cases relied on a now-two-decade-old study by the Department of Justice, which purported to show that 18-to-20-year-olds were responsible for a disproportionate share of violent crime. *See Horsley v. Trame*, 808 F.3d 1126, 1133 (7th Cir. 2015); *NRA*, 700 F.3d at 210; *Powell*, 926 F. Supp. 2d at 392–93. But more recent data shows that 18, 19, and 20-year-olds are arrested for violent crime on a disproportionately *less frequent* basis than 21-year-olds, *see* Pls.' Br. 25—a more relevant data point than comparing their crime or arrest rates to *the population as a whole* (a

---

(stating no causal link); Cassandra K. Crifasi et al., *Association Between Firearm Laws and Homicide in Urban Counties*, 95 J. URBAN HEALTH 383, 387 (2018) (finding only "association" between right-to-carry laws and homicides). They are thus consistent with the NRC and CDC working groups' conclusions that no causal effect has been demonstrated. *See* Pls.' Br. 23–24. Moreover, the data also fails to account for the difference between justifiable homicide (*i.e.* lawful self-defense by law enforcement and the public) and unjustifiable homicide.

group that includes, for example, octogenarians). Defendant's Amici attempt to wave this problem away by arguing that Pennsylvania "might have been justified" in extending the challenged restrictions "to young adults over 20." Amici Br. 14 n.22; *see also id.* at 11 ("the human brain does not finish developing until the mid-to-late twenties"). But while Amici would doubtless be delighted to ban anyone under the age of 30 from carrying a firearm (and would probably not stop there), this Court must assess the constitutionality of the laws *Pennsylvania actually enacted*. And those laws draw a palpably irrational distinction between 20-year-olds and 21-year-olds.

More fundamentally, even if it were true that 18-to-20-year-olds disproportionately contributed to gun violence compared to other age groups, that alone could not justify blocking *all* 18-to-20-year-olds from exercising their Second Amendment rights. If that reasoning were sound, then the government could disarm *any* demographic group—say, males or the poor—simply because a minority of people in the group commit violent crimes at a disproportionate rate. That result is simply untenable. *See, e.g.*, *Craig v. Boren*, 429 U.S. 190, 191, 201–02 (1976).

5. Finally, even if Pennsylvania had met its burden to show that the challenged laws further its public safety goals, they would *still* be unconstitutional, under intermediate scrutiny, because they do not possess the required "close fit between ends and means." *McCullen v. Coakley*, 573 U.S. 464, 486 (2014). Taken together, the effect of the challenged provisions is to allow 18-to-20-year-olds to openly carry firearms for self-defense in ordinary times but to ban them from doing so during the present COVID-19 and opioid crises. There is no plausible justification for this disparate treatment. Defendant has certainly presented no argument or evidence for that proposition. Amici once again rush to fill the void, arguing that emergencies "are characterized by mass uncertainty and fear that threaten public safety," and that "[g]un violence can spike during widespread emergencies," Amici Br. 15, 16. But even if true (and the interminable duration of

many "declared emergencies" casts serious doubt on the notion that the challenged limits are limited to "exigent circumstances," *id.* at 15), all that shows is that the ability of ordinary 18-to-20-year-olds to defend themselves and their families should be protected with *even greater solicitude* during such crises.[8]

Even if the present public-health crises *did* provide some justification for limiting Second Amendment rights, Pennsylvania must, under intermediate scrutiny, advance its interests without burdening substantially more protected conduct than necessary. Yet it has made *no apparent effort* to even *consider* less restrictive alternatives. Its ban thus cannot stand. *McCullen*, 573 U.S. at 494–95; *Bruni v. City of Pittsburgh*, 824 F.3d 353, 371 (3d Cir. 2016).

## II. The remaining factors favor preliminary injunctive relief.

The other equitable factors also support issuance of a preliminary injunction. Defendant does not dispute that the deprivation of a constitutional right constitutes irreparable harm. *See, e.g.*, *K.A. ex rel. Ayers v. Pocono Mountain Sch. Dist.*, 710 F.3d 99, 113 (3d Cir. 2013). And while the State asserts that the "balance of the equities and public interest both weigh against enjoining enforcement of laws that . . . limit[ ] access to dangerous weapons for those in an age group the social science shows is disproportionately disposed to violence," that contention is completely unsupported, given Defendant's failure to submit *any evidence whatsoever* that the challenged provisions actually further public safety.

## CONCLUSION

A preliminary injunction should issue.

---

[8] Amici assert that "publicly carried firearms are not commonly used for self-defense," Amici Br. 8, but the study they cite relies upon the flawed National Crime Victimization Survey ("NCVS"), which is well known to have dramatically underestimated the number of instances of self-defense. *See* NATIONAL RESEARCH COUNCIL, FIREARMS AND VIOLENCE 103 (Charles F. Wellford et al., eds., 2005) ("No other surveys have found numbers consistent with the NCVS")).

Dated: January 15, 2021

s/ David H. Thompson
David H. Thompson\*
Peter A. Patterson\*
Haley N. Proctor\*
John D. Ohlendorf\*
COOPER & KIRK, PLLC
1523 New Hampshire Avenue, N.W.
Washington, D.C. 20036
(202) 220-9600
(202) 220-9601 (fax)
dthompson@cooperkirk.com

Adam Kraut, Esq.\*
Firearms Policy Coalition
1215 K Street, 17th Floor
Sacramento, CA 95814
(916) 476-2342
akraut@fpclaw.org

Respectfully submitted,

Joshua Prince, Esq.
Attorney Id. No. 306521
Civil Rights Defense Firm, P.C.
646 Lenape Road
Bechtelsville, PA 19505
Joshua@CivilRightsDefenseFirm.com
(888) 202-9297 ext 81114
(610) 400-8439 (fax)

\* Appearing *pro hac vice*

*Attorneys for Plaintiffs*